Good morning, Illinois Appellate Court, 1st District Court is now in session. The 4th Division, the Honorable Justice Jesse G. Reyes presiding. Case number 21-1131 Station Place Townhouse Condominium Ass'n v. Village of Glenview. Thank you, Mr. Schaffer. Good morning, ladies and gentlemen. Would counsels who are going to be arguing this matter please identify themselves for the record and please indicate which party you're representing. Good morning, your honor. My name is William Seitz. I'm counsel for the Plaintiff's Appellants Station Place Townhouse Condominium Association, Prairie Street Townhouse Condominium Association, and the three individual unit owners at those condominium associations, Michael Papura, Virginia Papillo, and Christopher Johnson. Thank you. Good morning, your honors. Kurt Aspruth on behalf of the Village of Glenview. Okay. So, gentlemen, 15 minutes apiece. Appellant, you want to save some time for rebuttal? Yes, Justice. I'd like to save four minutes for rebuttal. All right. Okay. All right. Are we ready to proceed? Yes. All right. Okay, you may proceed. Let me just say this. As you can hear, I'm coughing. And so I may turn off my volume. Thank you. Or my audio. I don't want to disturb you. All right. You may proceed, Appellant. Thank you. It please the court. My name is William Seitz. I represent the Plaintiff Appellant. In 2020, the plaintiffs filed a verified complaint against the Village of Glenview that has now been amended two times. This is entirely a pleadings case. At this point in time, the parties are not at issue as the village has never answered the complaint. The parties seek an evidentiary hearing. To do that, the parties need to answer, the village needs to answer the complaint. The plaintiffs are looking for their day in court date for the village to answer the pleadings that the plaintiffs have set forth. At this point, and before this court, the allegations that we have pled need to be accepted as true. The village, a lot of the proceedings that the village entered into were done in executive session. So we don't have all the evidence that we would need to do at a trial. That would be to discovery. But the pleader is not required in Illinois to set forth its evidence. To the contrary, we spoke most of the facts. That's the Zikes versus Village of Glenview case, which is exactly the same type of case as this. So when considering a motion to dismiss, all the well-plead facts, all the reasonable inferences, which can be drawn from those facts, are considered to be true. So if this court looks at this case, the village can only be affirmed if there's no set of facts that can be proven under these pleadings that would entitle the plaintiffs to relieve. And we would assert that that is not the case and that this case needs to go back to the trial court. Counsel, can I interrupt you for a second? So doesn't this really just boil down to whether or not the village acted under its home rule authority, and it did have authority under the statute, as having a home rule, and they conducted the transaction under the home rule authority? There's actually two things, Justice Reyes. There's the home rule. Under the home rule, that's count one of the complaint. The village, you know, the naysay procedures, there's no... Unlike, for example, the city of Chicago, which has a specific ordinance relative to sale of surplus property, the village of Glenview has no ordinance. We're not challenging the ordinance. All the village of Glenview is doing is not following the state law and simply selling state property. So this is... There's no case law that the village can cite that states that they had the right to not follow state law under home rule. And so home rule is part of this case. The other part of this case is the rezoning. So the home rule part of this case is the contract that they sold at a loss to this developer. The rezoning part is the other part of the case. That's the LaSalle factors part of the case. So it's really two cases, Justice Reyes. But the home rule part of the case, the village would like you to think that there's an ordinance here.  They're simply ignoring the state law. And if they had an ordinance, then that'd be a different story. But they have no ordinance. They're simply selling... They're buying real estate and selling it. And again, other jurisdictions have ordinances for the sale of surplus property. Glenview doesn't. And that's a minimum state standard. And I might add, Justice Reyes, that the whole idea of this law for either bidding or a appraisal, that's for the benefit of the municipality. Because it gives them a safe harbor in case anybody questions the sale. The village of Glenview has decided, for whatever reason, it's unclear to me why they've decided to do this. They're simply selling this property and saying we don't need to comply with the state law. So the reason for that, I don't know why, because everything they did was an executive session. But they're not complying with state law. So there's no ordinance here, Justice Reyes. Okay. So the other part of the case is the sale of factors. But on the whole, since you brought it up, basically what we've got here is the village is... The Constitution has a provision which is subsection A and subsection I. Subsection I is if you have an ordinance. Subsection A is if just general home rule authority. Subsection I is the Palm case. That's a condominium case. Here there's no ordinance. So it's under A, the Stubhub case. And under the Stubhub case, the court, in a very well-written 2011 decision, went through the constitutional provisions and specifically stated four things that the state has an interest in over in municipalities. Divorce, trust, contracts, and property. Two of the four are in this village contract, property and contracts. So the state definitely has an interest in... And unfortunately, the state's got a bad record as far as local municipalities selling public property. So that's the home rule issue, Justice Reyes. So I've set that forth in my brief, but on the home rule, I might add that... The reason why this whole issue came up, I've been working on this for four years. I brought up to the village. I said, why are you doing this? Because there are other home rule jurisdictions that were selling land. And I said, well, they're following the state law. Why aren't you? If you look at the village's brief, there's no citation of any municipality that's doing what they're doing. So if the court looks at the village's brief, you'll note that. The second issue, Justices, that I'd like to bring to your attention is the issue of due process. The Municipal Code has a substantive and procedural due process. And it's a de novo hearing. This court just saw Glenview in the Sullivan versus Village Glenview case. It had a discussion about procedural due process. I won't belabor the point other than the fact that it's fact-driven. And for the same reasons that it was important in that case, it's important in this case. On substantive due process, no matter what happens in the Straus versus City of Chicago case, the Village of Glenview ended up at the trial court arguing the Straus case that came out the very day that I filed my pleadings, which was quite unfair, actually, because I didn't argue a rational relationship because that case came out on the day of my pleadings were filed. So the court at a minimum should have given me an opportunity to replete. But I do think that the Illinois Supreme Court, that case is still pending. It was argued on May the 11th. We did file an amicus brief in that case. I do think that the result in that case will be reversal, but even if it isn't, I do think that the result here ought to be a remand back to give us an opportunity to argue that there's no rational relationship because I do think that there's a lack of rational relationship between the village's decision-making and the sale of this property. So- I have a question with regards to the substitute process count. What about the fact that the circuit court felt that the plaintiffs, your clients, did not provide the court with enough information, enough facts for it to be able to make a specific determination one way or another? Well, the thing that it is, is this sort of the, you know, to me, the unfairness of it, and this is the Zeitz versus Village of Glenview case is from 1992 from this court is, you know, the Village of Glenview, much of what they did was done in executive session. So we put together what we could on each of those eight sale factors of what, and, you know, we can't, we couldn't prove our entire case, but we put together what we thought were the key parts of what our case was going to be. And obviously our next step would be to seek the village to discovery from the village on those points. The court below ordered us to plead under the Zeitz versus Village of Glenview case. And then when the court dismissed the count, dismissed it under the Straus versus City of Chicago case, which was the, which was, as I mentioned, the rational relationship. And so we never really, you know, the court raised the issue of, you know, we didn't plead about the, showing that no rational relationship between construction of this big building and the village's interest in the welfare and health of its citizens. But that wasn't, that case hadn't come out and that wasn't what she had ordered us to do. So- I'm sorry to interrupt, but isn't the fact that it wasn't so much the reliance on the cases, but the court indicated that you had not pled sufficient substantive and specific facts, which is other than just citing law. I mean- We went to great effort to get the entire record in the Zeitz case. And so I basically went through the entire record of the Zeitz case. It's now been completely scanned. And so, you know, I went through that and they didn't even cite the Zeitz case in their motion. So, you know, I looked at Justice Murray's decision in that case and I followed it. So, you know, I felt that, you know, I was following her direction and I also was following the direction of this court as far as what needs to be pled for that type of account. And then the only other thing I know, I know my time is running short, Open Meetings Act. The village, you know, obviously, but with the time that had gone on this, the village had several COVID meetings and at these meetings, there were issues that we think are fact-specific. The village is arguing that as long as it's open, it doesn't, you know, that immunizes them. I think that there's cases that say that those are fact issues that need to be, a trier of fact needs to look at as to whether it was convenient and whether it truly was open to the public. And so we would like the court to order the circuit court to acquire the village to answer. Again, that's another one where the village has all the information, not us. So- So with regards to this issue about the Open Meetings Act, regarding to any meetings that pertain to the sale of property or anything that pertains to the property itself, were all meetings either recorded or transcribed some manner, shape or form? They were on video, yes. All three of those meetings are on video. So if this court would like to watch the video, all those meetings are on video. The Appearance Commission video, you might find that humorous. So, because they had the wrong login number for the phone number. But yes, yeah, they're all, but the thing that is, it's an issue of fact, and it shouldn't have been outright dismissed without an opportunity to delve into that. And I don't think the court is that limited as far as its authority to just simply, you know, allow the, you know, I think Zoom is a very nice feature, but you know, if somebody uses it to control, I think it's a very bad situation, so. All right, all right. Thank you, counsel. All right, you have about, you reserved four minutes for rebuttal, so. Appellee, Mr. Aspruth. Proceed? Yes. Good morning, your honors. May it please the court, counsel Kurt Aspruth on behalf of the Village of Klenview. Your honors, I'll start with the first issue that appellants raise here, the PSA validity of the purchase and sale agreement. Plaintiffs claim that this is an issue where the village didn't adopt an ordinance, and therefore there's this different test for this home rule authority. First, plaintiffs never raised this argument in the lower court, nor did they raise this argument in their appellant brief. So that issue is weighed. Had they raised it, we would have cited the clear case law that says that a home run municipality need not enact an ordinance to exercise its home rule powers. And I can provide that site to the court if you would like. It's Beneficial Development Court versus City of Highland Park, 161 Hill 2D321. So the village adopted this purchase and sale agreement under a resolution. It did not need to adopt an ordinance to act. And so plaintiffs argue that somehow this home rule issue is completely different because there was no ordinance is wrong. The test for home rule power is if it relates to the municipality's local government affairs and it hasn't otherwise been preempted by the legislature, then a home rule municipality may act. The section of the municipal code that plaintiffs cite here, there is clearly no preemption by the Illinois legislature here. There's no express preemption. Thus, the test is whether or not this relates to the village's local government and affairs. And there's a case directly on point here that plaintiffs failed to address in their brief, even though the circuit court relied on it expressly on this count. And that's Carbondale-Exper-El-Ham versus Eckert 76 LF 3D881. In that case, exactly as this case, Carbondale sold property in a manner that was in direct conflict with the state statute. And the court in Carbondale upheld that action as a reasonable exercise, as a proper exercise of the city's home rule powers because it said that the manner for the sale of its own property for real development purposes, and I'll quote, that it did not require a liberal construction to determine that that sale relates to the village's or the city's own local government and affairs. Carbondale controls on this issue. It's the exact same situation here. The village owned a piece of property under its home rules powers. It determined the best method to sell that property and it adopted a resolution doing so. The fact that the sale of its own property clearly relates to the village's own local government and affairs. Plaintiff's citation of the StubHub case is completely irrelevant. That dealt with it at regulating internet taxes and the court in there found that there was a clear statewide concern in regulating internet taxes. There's no statewide concern at issue here. And Plaintiff's claim- Can I ask you a question about the sale? One of the things that they raised also is that the village failed to comply with the Illinois Municipal Code because there was no appraisal. And then the price of the property, the sale price of the property was supposedly 80% of the value of the property. Yes. Yes, Justice Reyes, that is what the statute requires. The village under its home rule authority decided that it was a better opportunity to sell the property to a developer and not have to follow those provisions under the Municipal Code. And that's precisely what Carbondale did in Eckerd. They decided that they didn't want to have to follow a statutory requirement that say that held that they had to sell the property to the highest bidder. That's what the Illinois Municipal Code said in Eckerd. Instead of doing that, they engaged in private negotiations and sold the property without going through that bidding process. In Eckerd, the court said that that was permissible. That related to the city's local government affairs. That was a proper exercise of their home rule authority. That is precisely the situation that we have here, Justice. This is the village deciding that this is the best way they created its own unique local solution to this problem under its home rule authority and decided this was the best manner to sell its own property. And there's case law that clearly says in Palm versus 2800 Lakeshore Drive Condo Association from the Illinois Supreme Court in 2013, clearly holds that a home remunicipality can enact an ordinance or take action that directly conflicts with state statute. And plaintiff's claim that this was the minimum that we had to abide by and that we could not act in conflict with the municipal code is simply contradicted by the clear case law. Unless the legislature decides that they want to preempt that field, a home remunicipality can act as long as that action relates to its local government affairs. Under the case of Carbondale-Eckerd versus Eckerd, the village's action here relates to its local government affairs. And since there is no preemption, that is a valid exercise of the city's home rule powers or the village's home rule powers. Justice, now I'll get into the due process claims here. First, plaintiffs don't throughout this case, they have not been able to point to whatever factual allegations that actually support their claim that the village's zoning ordinance was arbitrary or rational. In their opponent brief, the only issue they raise is whether or not the proper standard of review was applied. And they claim that the improper standard review was applied because of the Strauss decision, but that's simply not true. This courts in Illinois have held for years that challenge substantive due process zoning challenges are subject to rational basis review. And the seminal case on this is Napleton versus Village of Hinsdale. And in that case, and I can provide a site as well, it's cited in our brief extensively, that case clearly held that as applied zoning challenges are subject to rational basis review. This was not a new standard. The circuit court didn't apply some new standard that came out when plaintiffs, after plaintiffs had filed their complaint. This has been the standard in Illinois for years and courts routinely have applied the rational basis standard to zoning challenges. So plaintiffs claim that they weren't aware of what the standard of review was, is simply baseless. Further, they had three opportunities to plead a substantive due process claim with sufficient factual allegations to allege that the zoning ordinance did not pass rational basis review. In each case, they failed to do so. And in their brief, they don't even point to what factual allegations were sufficient. The circuit court went through a detailed analysis of all of their allegations and why they either supported a rational basis for the zoning ordinance or were so conclusory that they could not actually be factual allegations supporting that it lacked a rational basis. They're in a pound's claim that they were directed to plead under this site's case. Again, the standard has been in Illinois for years that it's rational basis review. There have been several cases where courts have dismissed a substantive due process claim because they alleged insufficient facts or conclusory allegations in a complaint and dismissed it at the pleading stage because rational basis review is so deferential. The village's zoning ordinance carries a presumption of validity. And in order to exceed that or overcome that presumption, it's a very high burden. Plaintiffs claim that they needed to plead under this Zwick case or Zite's case. It is simply irrelevant. Even though they pled a new complaint, supposedly in conformance what they saw in Zwick or in Zite's, they still didn't point out to the court what allegations they pled that were actually sufficient, what factual allegations supported their claim that the zoning ordinance was arbitrary or irrational. And they still, in their briefs to this court, still failed to point to any allegations that were actually state facts that support that. And the circuit court went through a detailed analysis of that. Plaintiffs don't refute those findings or those rulings, nor do they point to any facts stating why their allegations were sufficient even under the Zite's case. Plaintiffs simply, throughout this case, plead conclusions. They conclude that the village violated the law. They conclude that the village violated their substantive due process rights. But they don't allege facts that the village violated their substantive due process rights. Frankly, their complaint itself, as the circuit court found, contained facts that showed a rational basis for the zoning ordinance. Plaintiffs don't raise these issues in their briefs, but the circuit court's order dismissing this very clearly lays out what allegations, in fact, support the fact that the zoning ordinance had a rational basis. So their claim that there's somehow a different standard here is simply baseless. Rational basis has been the standard for substantive due process challenges in Illinois for years, years. That standard is not changing under Strauss in any way, shape, or form. What about their argument regarding Strauss that you don't have to really kind of specifically give the reasons, but you can hypothesize the reasons for the legislative action? Certainly, and that's a long-held standard for rational basis review in Illinois as well. Rational basis review is the most deferential standard. Any ordinance that is subject or any legislative action that is subject to rational basis review, courts have been permitted to hypothesize reasons or rational basis for it for years. That is a standard concept of rational basis review, and that's because rational basis is so deferential in that it should not be a legislature having to act as a court of law. It's a legislative act. It's subject to this very deferential rational basis standard. If there is any conceivable basis to uphold a legislative action, then it survives rational basis review. If it's an action that implicates a different property right, then maybe it goes into an intermediate scrutiny or strict scrutiny, and that's certainly a higher standard to survive. But under rational basis review, which the zoning ordinances standard is subject to, that is the clear test, any conceivable basis. And in this case, Your Honor, I will say that the circuit court did go through plaintiff's allegations and find that plaintiff's own allegations show that there was a rational basis, and that their actual allegations on the LaSalle factors were entirely conclusionary. Entirely conclusionary. There were no facts supporting this. They basically just parroted the standards. And I'll address briefly their Open Meetings Act allegations here as well, since I know I'm running low on time as well. Plaintiffs make several claims that all of these actions by the village were taken in closed session. There are simply no allegations to that effect in their complaint regarding these meetings. They don't allege that there was a closed meeting here, that there was an improper closed meeting. They allege that these open meetings were improperly conducted on Zoom. Regardless of that fact, the only relief appellants sought in their Open Meetings Act claim was the invalidation of the village's actions taken at these meetings. The Open Meetings Act is very clear that the only remedy a court can grant to invalidate an action taken at a meeting is when that action is taken at a closed meeting. Plaintiffs simply do not allege that there was any closed meeting taken here. And there's clear case law on this issue that we cited in our brief extensively. Appellants failed to even address it in their reply. It's the case of Board of Education of Waukegan Community Unit School District 60 versus Illinois State Charter School Commission 2018 ILAP First 162084. That's a case from this district in 2018. In that case, there was a challenge to an Open Meetings Act challenge brought. They sought invalidation of actions taken at an open meeting. And the court held that that simply, the claim failed. That wasn't an available remedy that the court could grant them. And they actually, what the court in that case actually went through the legislative history behind the Open Meetings Act and pointed to specific statements where legislators said the intent of this language in the Open Meetings Act is to prevent a court from overturning actions taken at an open meeting and only to allow them to overturn actions taken at a closed meeting. And there's two other cases that are clearly on point there that support that position as well. Chicago School Reform Board of Trustees versus Martin 309 ILAP 3D 924 and Williamson versus Doyle 112 ILAP 3D 293. Those cases hold the same thing. If you bring an Open Meetings Act challenge and the only relief you seek is invalidation of an action taken at an open meeting, your claim fails. Plaintiffs, the only relief plaintiffs sought in this case was invalidation of the actions taken at an open meeting. The Circuit Court correctly held that these cases say their claim fails as a matter of law because the Open Meetings Act simply does not allow that. Thank you. Thank you, Justice. Thank you, Your Honor. Any questions from the panel? I don't have any questions. I did want to let everyone know that I got thrown off the internet. So I missed a part of the appellant argument and the beginning of the appellate. I assure you I will listen to the tape. Thank you. Thank you. Justice Martin? No questions, Justice. Thank you. All right. Rebuttal? Yes, Justices. First off, in rebuttal to Mr. Ashcroft, one thing. You're casual with the word ordinance. I'm sorry. The casual with what? The word ordinance. Oh, OK. So there's a difference between the ordinance to build this property and ordinance to sell surplus property. Glenview has no ordinance to sell surplus property. Glenview has an ordinance to build this property. There's a big difference between the two. So the city of Chicago has an ordinance to sell surplus property. Glenview does not. So when he's talking about this is our best method, no. What he's really saying is that there's a state law that they decided not to follow. So that is not the same thing as an ordinance. They're confusing the terms. And the one thing that I would say is he's asking this court to rely upon a fifth district case from 1979. And in my reply brief, the city of Carbondale complies with state law today. So 1979, the issue was federal law versus state law. So he's taking this court down a rabbit hole. There's 82 home rule jurisdictions in Cook County. So there's a lot of jurisdictions that conceivably, if this court says that they don't have to comply with state law, this conceivably could impact a lot of other jurisdictions. The second thing is this whole business of the Strauss case. The Strauss case, as I said, I filed an amicus brief in that case. The case is still pending. He's not correct when he says that Napleton is, and this law has always been the same. Napleton says that the rational basis test is when you have a facial discrimination case, not an as-applied discrimination case. He's mixing and matching his type of cases. And so what we have here is an as-applied case. It only applies this ordinance that we're challenging, this zoning ordinance, only relates to this particular property. We're not challenging it for all impacts everywhere, just this particular property. And that's a little self-factors. And as far as the Open Meetings Act, the way he has set forth his argument in Open Meetings Act, basically all they have to do to comply with the Open Meetings Act is say that a meeting's open. They can lock the virtual doors. And as I said, you can look at that virtual meeting that they had where they had the right log-in number. And as long as it's open, then quote, unquote, the court can't do anything about it. One of the cases that he cited says that item C, that subsection C, is one of inclusion. So the court doesn't have as limited authority as he cites it as having. So for that reason, justices, we respectfully request that the trial court be reversed and that this matter be sent back to the trial court and that the bill be required to answer the complaint. Thank you. Thank you, counsels, for a well-argued matter and an interesting case. We will take it under advisement. And at this point in time, the court's going to take a recess to proceed to another argument that we have after this case.